**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **RAYMOND JAMES & ASSOCIATES, INC.,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **No.** _____ |
| | ) | |
| **50 NORTH FRONT ST. TN, LLC;** | ) | |
| **JACOB SOFER;** | ) | |
| **REGAL HOLDING GROUP, LLC;** | ) | |
| **WATERFRONT LIVING I, LLC;** | ) | |
| **MADISON HOLDING TRUST;** | ) | |
| **HANNA SOFER;** | ) | |
| **MIRABLE CAPITAL, LLC; AND** | ) | |
| **RIFKY (SOFER) FRIEDMAN.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

**COMPLAINT TO VOID FRAUDULENT CONVEYANCE, FOR ATTACHMENT, FOR
INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiff Raymond James & Associates, Inc. ("Raymond James") files this Complaint to

Void Fraudulent Conveyance, for Attachment, Injunctive Relief, and Damages against Defendants

50 North Front St. TN, LLC ("50 North"), Jacob Sofer ("Mr. Sofer"), Regal Holding Group, LLC

("Regal"), Waterfront Living I, LLC ("Waterfront"), Madison Holding Trust ("MH Trust"), Hanna

Sofer ("Mrs. Sofer"), Mirable Capital LLC ("Mirable Capital"), and Rifky (Sofer) Friedman

("Mrs. Friedman") and states the following in support:

## I.    PARTIES, JURISDICTION, AND VENUE

1.    **Raymond James.** Raymond James is a Florida corporation with its headquarters

in St. Petersburg, Florida and with offices in Memphis, Tennessee.

1

2.      **50 North Front St. TN, LLC.** 50 North is a Delaware limited liability company that is headquartered in New York. Upon information and belief, 50 North is currently owned by two members: Waterfront and Regal, which are owned and/or controlled by Jacob Sofer.

3.      **Jacob Sofer.** Mr. Sofer is a citizen of New York who resides in Monroe, New York. Upon information and belief, he is the sole member of Regal and is also one of the two trustees of MH Trust.

4.      **Waterfront Living I, LLC.** Upon information and belief, Waterfront is a Delaware limited liability company whose sole members are MH Trust and Regal.

5.      **Regal Holding Group, LLC**. Upon information and belief, Regal is a New York limited liability company whose sole member is Mr. Sofer.

6.      **Madison Holding Trust.** Upon information and belief, MH Trust is a trust created under the laws of the state of New York, whose sole trustees are Mr. Sofer and his wife, Hanna Sofer.

7.      **Hanna Sofer.** Upon information and belief, Mrs. Sofer is a citizen of New York and resides in Monroe, New York.[1]

8.      **Mirable Capital, LLC.** Mirable Capital is a New York limited liability company with its principal place of business located in Monroe, New York. Upon information and belief, Mirable Capital's sole member is Rifky (Sofer) Friedman.

9.      **Rifky (Sofer) Friedman.** Upon information and belief, Mrs. Friedman is a citizen of New York, resides in Monroe, New York, and is the daughter of Mr. and Mrs. Sofer.[2]

---

[1] Collectively, Mr. Sofer, Mrs. Sofer, 50 North, Regal, Waterfront, and MH Trust are referred to as the "Sofer Defendants."

[2] Collectively, Mirable Capital and Mrs. Friedman are referred to herein as the "Mirable Defendants."

2

## II.    INTRODUCTION

10.    Raymond James leased Memphis offices in the tower located at 50 North Front Street (the "Building") under a Lease that its landlord, Defendant 50 North, has wielded throughout the parties' years-long litigation as a shield against liability. 50 North contends that the Lease makes the Building the sole and exclusive asset against which Raymond James can collect. By 50 North's logic, the Building is the only asset Raymond James can ever look to for recovery -- and thus any maneuver that strips the Building of its value would leave Raymond James holding an uncollectible judgment.

11.    This lawsuit concerns the *second* attempt by 50 North and Jacob Sofer -- the individual who owns and controls 50 North -- to fraudulently transfer the Building to hinder 50 North's creditor[3], Raymond James. Their first attempt was an under-market-value sham "sale" of the Building to an insider friend of Mr. Sofer in 2024. This maneuver, however, was quickly abandoned last summer after Raymond James discovered it and threatened to sue.

12.    Now, just months later, Mr. Sofer has engineered yet another fraudulent transfer to make 50 North judgment-proof. This time, Mr. Sofer's scheme involves placing a sham lien on the Building both through various entities he owns/controls, as well as members of his own family. A step-by-step description of this sham goes as follows:

---

[3] A "creditor" under the Tennessee Uniform Fraudulent Transfers Act ("TUFTA") is a person – defined to include corporations and any other legal or commercial entity – "who has a claim[.]" See Tenn. Code Ann. § 66-3-302(4). In turn, TUFTA defines a "claim" broadly to mean "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" Tenn. Code Ann. § 66-3-302(3).

    a. Mr. Sofer, acting as 50 North's Manager, caused 50 North to purportedly incur more than $13.5 million in debt to another Sofer-controlled entity -- MH Trust -- by way of two unsecured promissory notes (collectively referred to herein as the "Notes");[4]

    b. After none of that debt was paid, Mr. Sofer's wife -- Hanah Sofer -- who was also a co-trustee of MH Trust, assigned the unsecured Notes to Mirable Capital, an entity formed one day earlier and owned by the Sofers' daughter, Rifky (Sofer) Friedman;[5] and

    c. Mirable Capital, acting through Mrs. Friedman and at Mr. Sofer's direction, then sued 50 North in New York on the Notes, obtained a $19,086,594.03 default judgment due to 50 North's failure to defend, and then domesticated and recorded that judgment in Shelby County, Tennessee as a purported first lien against the Building (the "Fraudulent Judgment Lien").[6]

13. The Fraudulent Judgment Lien is the device that harms Raymond James: it encumbers the Building as a first priority lien for more than $19 million, strips the Building of all or nearly all of its equity, and, under 50 North's reading of the Lease, renders 50 North effectively judgment-proof as to Raymond James—all while Mr. Sofer continues to own and control both the Building and the entity that holds the lien. Raymond James therefore asserts claims under the Tennessee Uniform Fraudulent Transfer Act for the fraudulent incurrence of the Notes (Count I), the fraudulent transfer and encumbrance of the Building (Count II), and civil conspiracy to do both (Count III), and asks this Court to set aside the Notes and the Fraudulent Judgment Lien and grant attachment, injunctive relief, and damages.

---

[4] See pp. 14-15, infra.

[5] See pp. 15-16, infra.

[6] See p. 16, infra.

## III.    JURSIDICTION AND VENUE

14.    Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because more than $75,000 is in controversy given the damages sought, the value of RJA's lien lis pendens on the Building, and the fact that RJA seeks injunctive relief,[7] and upon information and belief complete diversity of citizenship exists between the parties.

15.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Raymond James' claims occurred in the Western District of Tennessee, and the property that is the subject of this action is situated in this judicial district.

16.    This Court has personal jurisdiction over 50 North and Mirable Capital. Among other things, 50 North is the owner of the subject Building located at 50 North Front Street, Memphis, Tennessee 38103, and through the domination and control of Mr. Sofer, 50 North has conspired with the Sofer Defendants and the Mirable Defendants to impose a fraudulent lien upon the Building. Among other things, Mirable Capital domesticated a foreign judgment against 50 North in the Chancery Court of Shelby County, Tennessee, and thereafter had that judgment filed as a lien against the Building in Shelby County, Tennessee. This action arises out of said ownership and said enrollment, and a substantial part of Defendants' actions and the consequences of those actions occurred in Tennessee. Moreover, 50 North has affirmatively created personal jurisdiction by bringing claims against Raymond James in this same Court.

---

[7] In the Sixth Circuit, "the amount in controversy is the value of the right that the plaintiff seeks to protect or the extent of the injury to be prevented" in an action for injunctive relief. 1Source Holdings, LLC v. Jackson, No. 2:19-CV-02639, 2020 WL 1809833 at *2 (W.D. Tenn. Apr. 8, 2020) (citing Goldsmith v. Sutherland, 426 F.2d 1395, 1398 (6th Cir.1970).

17.     This Court has personal jurisdiction over Mr. Sofer. Among other things, he purposefully directed and acted as a co-conspirator in the fraudulent scheme described herein and other activities in Tennessee, including by managing the Building for more than a decade, orchestrating a prior fraudulent transfer of the Building via quitclaim deed recorded in the Shelby County, Tennessee Register's Office, and orchestrating the current conspiracy among all Defendants to place a sham lien against the Building. Mr. Sofer is personally liable as a participant in the fraudulent scheme described herein. See Cooper v. Cordova Sand & Gravel Co., Inc., 485 S.W.2d 261, 271-72 (Tenn. Ct. App. 1971) ("If … a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort."). Mr. Sofer is also personally liable for the acts of each of the entity Defendants by virtue of his domination, control and/or direction of each of those Defendants, including his inclusion of them in the fraudulent scheme at issue, such that he is the alter ego of each of them. See Fed. Deposit Ins. Corp. v. Allen, 584 F. Supp. 386, 397-98 (E.D. Tenn. 1984) ("[W]hen a corporation is dominated by an individual or individuals not only as to finance but also as to policy and business practices so that the corporation has no mind, will, or existence of its own and this domination is used to commit a wrong, or fraud or perpetrate a violation of statutory or positive legal duty, the corporate veil will be pierced.") (citing Continental Bankers Life Insurance Co. of the South v. Bank of Alamo, 578 S.W.2d 625, 632 (Tenn. 1979)).

18.     This Court has personal jurisdiction over Mrs. Sofer. Among other things, Mrs. Sofer participated as a co-conspirator in the fraudulent scheme described herein and in other activities directed towards Tennessee, including as co-trustee of MH Trust, assigning all of MH Trust's rights and interests in the Notes to her daughter's newly created company, Mirable Capital

6

– the act that set in motion the sham $19 million judgment lien against the Building in Shelby County, Tennessee. Mrs. Sofer directed the transfer of instruments necessary to create a sham lien encumbering real property in this district, knowing that the consequences of her actions would be felt in this judicial district. In addition, Mrs. Sofer is personally liable for the tortious conduct she directed and participated in, even where those acts were nominally performed through MH Trust. Cooper, 485 S.W.2d at 271-72.

19.     This Court has personal jurisdiction over Regal. Among other things, Regal is a member/owner of 50 North, whose primary asset is the Building located in this judicial district. Through its ownership interest in 50 North, Regal directs and derives benefit from 50 North's ownership and operation of the Building, and its membership interest in 50 North ties it directly to the Tennessee property at the center of this dispute. Further, the fraudulent transfers at issue were effected in part through 50 North's ownership structure, of which Regal is a constituent. In addition, through the domination, control, and/or direction of Mr. Sofer, as well as under principles of respondeat superior and agency that make it responsible for his acts, Regal has also participated in the fraudulent transfers at issue that were directed at Tennessee.

20.     This Court has personal jurisdiction over Waterfront for the same reasons set forth above with respect to Regal. Waterfront is a co-member/owner of 50 North and, through that ownership interest, has a direct stake in the Building located in this judicial district.  Waterfront's membership interest in 50 North, which owns the Building at 50 North Front Street in Memphis, Tennessee, provides the requisite contacts with this forum, and the fraudulent transfer discussed in this Complaint was accomplished through the ownership structure in which Waterfront participates.

21.     This Court has personal jurisdiction over MH Trust. Among other reasons, MH Trust participated in the fraudulent scheme at issue that was directed at Tennessee; MH Trust's acts – performed through its trustees, Mr. and Mrs. Sofer – and under the domination and control of Mr. Sofer, were purposefully directed in Tennessee. This includes its acceptance of a promissory note from 50 North, whose primary asset was the Building located in Memphis, Tennessee. MH Trust, then, through Mrs. Sofer as trustee, assigned those notes to Mirable Capital, upon information and belief knowing of the intention to create a sham judgment lien to be enrolled against the Building in Shelby County, Tennessee. MH Trust's actions were purposefully aimed at Tennessee real property and were designed to affect the rights of a creditor – Raymond James – in litigation pending in this Court in Tennessee.

22.     This Court has personal jurisdiction over Mrs. Friedman. Among other things, she is a co-conspirator in the fraudulent scheme described herein, and, as the sole member of Mirable Capital, directed and participated in the filing of the sham lawsuit against 50 North in New York to collect on the assigned notes, and thereafter caused Mirable Capital to enroll the resulting $19 million foreign judgment as a lien against the Building in Shelby County, Tennessee. Mrs. Friedman purposefully directed her actions at Tennessee – specifically, at the Building in Memphis – knowing that the foreseeable and intended consequence of enrolling the judgment lien was to encumber what 50 North claims is the primary asset against which Raymond James could recover. In addition, Mrs. Friedman is personally liable for the tortious conduct she directed and participated in, even where those acts were nominally performed through Mirable Capital. Cooper, 485 S.W.2d at 271–72.

## IV.     FACTUAL ALLEGATIONS

23.     Raymond James is in a long-running dispute with 50 North over Raymond James' former leasehold in the Building. This dispute spans over eight years and involves two lawsuits

already pending in the United States District Court for the Western District of Tennessee – i.e., *Raymond James & Associates, Inc. v. 50 North Front St. TN, LLC*, No. 2:18-cv-02104-JDB-tmp (W.D. Tenn.) and *50 North Front St. TN, LLC v. Raymond James & Associates, Inc.*, No. 2:21-cv-02433-JDB-tmp (W.D. Tenn.) (collectively, these cases are referred to as the "Litigation"). Raymond James seeks to recover more than $13 million dollars from 50 North in the Litigation based on, among other things, 50 North's breach of the Parties' lease and various tort claims, including breach of contract, fraud, gross negligence, prima facie tort, and nuisance.[8]

24.     The Litigation arose from Raymond James' tenancy in the Building. On or about June 26, 2014, Raymond James entered into a new ten (10) year lease (the "Lease") with the then-owner of the Building, Parkway Properties L.P. ("Parkway"). A true and correct copy of the Lease is attached hereto as **Exhibit A**. Parkway later sold the Building to 50 North in January 2015 and, as part of the sale, the Lease was assigned to 50 North as the new "Landlord."

25.     The Lease purports to limit 50 North's liability to its interest in the Building:

> Notwithstanding anything herein to the contrary, Tenant's sole and exclusive method of collecting on any judgment Tenant obtains against Landlord, or any award made to Tenant in any judicial process requiring the payment of money by Landlord for the failure of Landlord to perform any of its obligations, shall be to proceed against the interests of Landlord in and to the Project.

Id. at p. 24, ¶ 40. The "Project" is defined in the Lease as "the Building and the Land." Id., at p. 3, ¶ 1(s).

26.     50 North has repeatedly raised this provision of the Lease as an alleged defense to liability in the Litigation.

---

[8] While Raymond James' tort claims were dismissed in the Litigation, the central issue related to that dismissal (i.e., the applicability of the Independent Duty Doctrine) is currently pending before the Tennessee Supreme Court by way of a Rule 23 Certification from this Court. See Order Certifying Question to the Supreme Court of Tennessee and Staying Case, ECF No. 534.

27.    Attempting to capitalize on this provision, 50 North has now twice sought to engineer fraudulent transfers involving the Building to preclude Raymond James' ability to collect on any future judgment. It first did this in 2024, when the Sofer Defendants and others undertook a fraudulent "sale" of the Building to a friend/business associate of Mr. Sofer. Raymond James discovered this transfer in 2025 and was on the verge of filing suit to have it set aside when 50 North abruptly reversed it. Undaunted, the Defendants are currently engaged in yet another fraudulent transfer scheme – this time by registering a bogus $19 million "judgment lien" against the Building that effectively strips most, if not all, of 50 North's equity from the Building. To the extent that the Lease's limitation on liability is enforceable, this lien could make 50 North judgment-proof as to Raymond James, even though this time 50 North still retains title.

**A.    The First Fraudulent Transfer: the Supposed "Sale" of the Building to SIG in 2024.**

28.    The Sofer Defendants' first fraudulent transfer – the attempt to make 50 North judgment-proof through a sham sale of the Building – was quickly abandoned once Raymond James threatened to sue. This episode, however, remains highly relevant to what is happening now, since it demonstrates a pattern and shows 50 North and the three entities that directly or indirectly own it are dominated and controlled by Mr. Sofer.

29.    This first fraudulent transfer occurred on or about September 1, 2024, when, upon information and belief, 50 North, at the direction of Mr. Sofer, "sold" the Building to SIG 50 N Front, LLC ("SIG") for ▮▮▮▮▮▮▮ via a quitclaim deed recorded in the Shelby County, Tennessee Register's Office. (A true and correct copy of this Deed is attached hereto as **Exhibit B**). This sham sale was illegal under TUFTA and implicated at least six (6) "badges of fraud" – i.e., facts that raise a presumption under Tennessee law that the transfer was made with the "actual

10

intent to hinder, delay, or defraud" a potential creditor.[9] These badges of fraud included the following:

30.      **Badge of Fraud No. 1:** **50 North sold the building for a fraction of its reasonable value.** The first badge of fraud is the sale of the asset at issue for less than its reasonable value. See Tenn. Code Ann. § 66-3-305(b)(8). While 50 North purportedly sold the Building to SIG for ██████████ both before and after that sale, 50 North had attempted to sell the Building at several multiples of that price. This included 50 North's attempt to sell the Building at the contracted price of ████████████████████████████████████████████ ████████████ Moreover, in April of 2024 – just over four months prior to the sale to SIG – Colliers International, the Building's local property manager – valued the Building at least at **$19.9 million.**[10]

---

[9] Under the TUFTA, the applicable badges of fraud here include whether:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> …
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; [and]
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred.

See Tenn. Code Ann.§ 66-3-305(b).

[10] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

31. **Badge of Fraud No. 2: 50 North sold the Building to an insider.** Another badge of fraud under TUFTA is whether the sale was to a friend or other insider. See Tenn. Code Ann. § 66-3-305(b)(1). Here, SIG – which was formed less than two months prior to this supposed purchase – was owned by ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ Other facts also reflect the lack of an arm's-length transaction, including ████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

32. **Badge of Fraud No. 3: Mr. Sofer ultimately retained possession of the Building following the sale to SIG.** Another badge of fraud is whether the debtor "retained possession or control of the property" after the fraudulent conveyance. See Tenn. Code Ann. § 66-3-305(b)(2). Here, Mr. Sofer retained both possession and control following the sale to SIG – operating the Building just as he had before. In fact, Madison Realties, LLC ("Madison Realties") – whose president is Mr. Sofer – continued to act as the Building's "asset manager," just as it had done since 50 North's original purchase back in 2015. ███████████████████████████

███████████████████████████████████████████████

33. **Badges of Fraud Nos. 4 and 5: 50 North was a Defendant in at least two active lawsuits at the time it sold the Building to SIG.** Two other badges of fraud relate to whether the sale occurred only after the debtor "had been sued or threatened with suit" and whether the transfer occurred "shortly before or shortly after a substantial debt was incurred." Tenn. Code Ann. § 66-3-305(b) (4) and (10). Here, 50 North had been sued in two separate suits – i.e., the Raymond

James Litigation in this Court and the Memphis 99 Parking Garage, L.P. case (the "Memphis 99" case) in the Chancery Court of Shelby County, Tennessee. That latter case, which involved 50 North's alleged breach of a parking space lease agreement, had resulted in an award of summary judgment against 50 North prior to the transfer of the Building to SIG. 50 North settled that case shortly after Memphis 99 moved for leave to file a supplemental complaint against 50 North, Mr. Sofer, and SIG that would have included a claim for fraudulent transfer of the Building.

34.     **Badge of Fraud Nos. 6: 50 North sold its only asset – the Building – leaving itself insolvent to satisfy any judgment received by Raymond James.** The final badges of fraud related to whether the sale resulted in the transfer of "substantially all the debtor's assets," and whether it made 50 North "insolvent." Tenn. Code Ann. § 66-3-305(b) (5) and (9). 50 North was organized primarily to own and oversee a single asset – the Building. Upon information and belief, the sale of the Building left 50 North insolvent, particularly to pay a future judgment to Raymond James, given the language in the Lease that purports to limit Raymond James' ability to collect to just that Building. (See p. 9, para. 25, supra). While the scope and enforceability of this Lease provision is disputed,[11] 50 North's sale of the Building to SIG could have left Raymond James with *nothing* upon which to collect.

35.     **Caught Red-Handed, SIG Re-Conveyed The Building to 50 North.** In July 2025, Raymond James confronted 50 North about its discovery of the fraudulent transfer of the Building and provided the draft complaint Raymond James was preparing to file that set aside this sham sale as a fraudulent transfer. In response, Mr. Sofer, upon information and belief, directed

---

[11] Raymond James has objected to the Court's interpretation of this and other of the Lease's terms to date in the Litigation given that the Court has found that this provision bars Raymond James from adding Mr. Sofer as a party to the Litigation and collecting on a judgment against him personally should 50 North be left without enough assets to pay.

that the sale be unwound, and SIG promptly conveyed the Building back to 50 North via Quitclaim Deed. (A true and correct copy of Instrument No. 25058083 recorded in the Shelby County, Tennessee Register's Office, is attached hereto as **Exhibit C**).

## B. Mr. Sofer Orchestrates a New Fraudulent Transfer: The Creation Of A Sham $19 Million Judgment Lien On The Building.

36. Having failed in his first attempt to defraud 50 North's creditors – including Raymond James – Mr. Sofer (along with the other Defendants) have now returned to the well to try again. This time, however, he has maneuvered to fraudulently encumber the Building – effectively stripping out most, if not all, of its equity – in an attempt to shield the one asset Raymond James clearly has a right to recover against under the Lease. While more complicated than a sale – since it involves sham lawsuits between 50 North and Mirable Capital that resulted in the placement of a $19 million judgment lien on the Building – it is still a transparent fraud that is subject to being set aside under the Tennessee Fraudulent Transfer Act.

37. This new fraudulent transfer involves a coordinated scheme orchestrated by Mr. Sofer through several entities he owns and/or controls. It began with a pair of unsecured promissory notes that were purportedly executed on December 1, 2023, between entities controlled by Mr. Sofer – i.e., notes made by 50 North[12] in favor of MH Trust[13] in the amounts of

---

[12] 50 North is controlled by Mr. Sofer since, upon information and belief, it is jointly owned by Regal and the MH Trust, and Regal, in turn, is 100% owned by Mr. Sofer. Mr. Sofer is also the "Manager" of 50 North and, upon information and belief, dominates 50 North and has total and complete control over its decisions.

[13] MH Trust is also controlled by Mr. Sofer since, upon information and belief, Mr. Sofer and Mrs. Sofer are the co-trustees of MH Trust and Mr. Sofer has complete control over the decisions of MH Trust.

$11,150,000[14] and $2,500,000.[15] Each of the Notes was executed by Mr. Sofer himself as the "Manager" of 50 North. (See copies of both Notes attached hereto as **Exhibit D and E**). While the Notes are between entities jointly controlled by Mr. Sofer – and the payor, MH Trust, is even a part owner of 50 North – the terms of the Notes are overtly punitive. For example, they impose above-market interest rates of 12% and 15%, respectively, each charges a default rate of 24%, an additional late charge of 5%, and a post-judgment rate of 24%.[16]

38.   There have been no building permits issued for work at the Building since the time the Notes were purportedly made, and upon information and belief, the $13,650,000 collective loan amount was not, in fact advanced and/or if it was advanced, the money borrowed was not used for the Building.[17]

39.   The Notes purportedly matured on June 1, 2025, with $15,996,405 purportedly due and owing, representing $13,550,000 in principal and $2,446,405 in interest on a a pair of obligations that had only been outstanding for 18 months. On September 3, 2025, via transfer

---

[14] The "Promissory Note" was issued by 50 North on December 1, 2023, in exchange for a loan of $11,150,000 from MH Trust, repayable in full on June 1, 2025, with an annual interest rate of 12%, and a late charge of 5% of all amounts overdue. See Promissory Note, a copy of which is attached hereto as **Exhibit D**; see also para. 37, supra. In addition, the Promissory Note imposes an interest rate of 24% annually in the event of default.

[15] The "Credit Line Revolving Note" (the "Revolving Note") was also issued by 50 North on December 1, 2023, in exchange for a loan of $2.5 million via credit line from MH Trust, repayable in full on June 1, 2025, with an annual interest rate of 15%, and a late charge of 5% of all amounts overdue. See Revolving Note, a copy of which is attached hereto as **Exhibit E**; see also para. 37, supra. In addition, and like the Promissory Note, the Revolving Note also imposes an interest rate of 24% annually in the event of default.

[16] See fns. 14 and 15, supra.

[17] A failure by 50 North to use the loan proceeds from the Notes to operate the Building would itself be a fraudulent transfer, given that such a maneuver would only serve to diminish or even eliminate 50 North's equity in the sole asset the Lease purports to allow Raymond James to levy upon.

15

documents signed by Hanna Sofer as Trustee, MH Trust transferred the Notes to Mirable Capital[18] – an entity owned by Mr. and Mrs. Sofer's daughter, Mrs. Friedman, upon information and belief. The records of the New York Department of State show that Mirable Capital had only been formed the day before. On September 9, 2025 – six days after the transfer – Mirable Capital sued 50 North to collect on the Notes. Although Mr. Sofer was personally served as "the Manager and President" of 50 North, 50 North did not appear and defend. See January 15, 2026 Decision and Order on Motion for Default Judgment from the Orange County Supreme Court, attached as **Exhibit F**, at p. 1. Instead, on February 4, 2026, a default judgment for $19,086,594.03 was entered in Mirable Capital's favor. See February 4, 2026 Orange County Supreme Court Judgment, attached as **Exhibit G** (the"Fraudulent Default Judgment"). The New York court also granted Mirable's request for post-judgment interest at 24% – a rate that equates to additional interest of $4.5 million annually. Id.

40.     Mirable Capital thereafter filed a petition to enroll the Fraudulent Default Judgment in Chancery Court in Shelby County, Tennessee. See *Mirable Capital, LLC v. 50 North Front St. TN, LLC*, Case No. CH-26-0191 (Tenn. Ch. Ct. Feb. 13, 2026). 50 North again failed to object or respond, and Mirable Capital was thus again awarded judgment by default in the amount of $19,086,594.03 (plus ongoing post-judgment interest at 24%). The Chancery Court Order domesticating the Fraudulent Default Judgment was enrolled on April 14, 2026, and that Order was recorded in the Shelby County Register's Office on April 21, 2026 (herein referred to as the "Fraudulent Judgment Lien").[19] The Fraudulent Judgment Lien now exists as a first-priority lien

---

[18] See September 3, 2025 Allonges executed for each of the Notes by Mrs. Sofer on behalf of MH Trust to Mirable Capital, collectively attached hereto as **Exhibit H**.

[19] See Chancery Court's April 14, 2026 Order Enrolling Foreign Judgment, recorded as Record No. 26030549 in the archives of the Office of the Shelby County Register on April 21, 2026, attached as **Exhibit I**.

against the Building. This sham judgment effectively strips the Building of most, if not all, of its equity, and if the Lease restriction described above is enforceable, likely renders 50 North judgment-proof as to Raymond James.

41.    As a result, this scheme is infected by numerous badges of fraud and should therefore be unwound. These badges include the following:

42.    **Badge of Fraud No. 1: The making of the Notes, the assignment of the Notes, the suit on the Notes in New York and the Suit in Tennessee to enroll the Fraudulent Default Judgment, were all the work of entities/people controlled by Mr. Sofer.** A primary factor in determining a debtor's[20] "actual intent" to defraud its creditors is whether the transfer was made to an insider. See Tenn. Code Ann. § 66-3-305(b)(1). The Notes were originally executed by Mr. Sofer on behalf of 50 North to MH Trust – one of the entities that owns it and, like 50 North, is controlled by Mr. Sofer, who along with his wife, are its sole trustees. The Notes were later assigned by Mrs. Sofer, on behalf of MH Trust, to Mirable Capital, an entity owned by the Sofers' daughter, Defendant Mrs. Friedman, which is controlled by Mr. Sofer through, among other things, that familial relationship, upon information and belief. The resulting $19 million-dollar Fraudulent Judgment Lien was *thus manufactured entirely within the Sofer family*, moving from one Sofer-

---

[20] 50 North is a "debtor" under TUFTA because it will be liable for any judgment (i.e. a "claim") Raymond James – a "creditor" under TUFTA – would receive at the conclusion of the Litigation. See Tenn. Code Ann. § 66-3-302(3), (4) and (6). Mr. Sofer is the alter ego of 50 North (see pp. 25, 29, infra) and as such should be considered a de factor debtor of Raymond James. See e.g. Gesellschaft v. Tennessee Tape, Inc., 1995 WL 296200 at *5 (Tenn. Ct. App. May 17, 1995) (affirming decision to pierce the corporate veil and find owner of corporate entity liable where owner fraudulently transferred assets from one sham entity he owned to another, rendering one of his entities insolvent and unable to pay debt owed to the plaintiff).

controlled entity to another. As a result of Mr. Sofer's control of the Sofer Defendants, they are each "insiders" of 50 North under TUFTA.[21]

43. **Badge of Fraud No. 2: Mr. Sofer's Scheme allows him and 50 North to retain possession and control of the Building.** Another factor used to determine a debtor's "actual intent" to defraud is whether the debtor "retained possession or control of the property transferred after the transfer." See Tenn. Code Ann. § 66-3-305(b)(2). No change in possession, management, or control of the Building occurred as a result of any of the events described herein, including the issuance of the Notes, their assignment to Mirable Capital, 50 North's defaults, or the enrollment of the resulting judgment lien. The lien was thus designed to strip the Building of equity – leaving Mr. Sofer and his entities in full ownership and/or operational control of the Building – while rendering it valueless to Raymond James as a vehicle to collect a judgment. Mirable Capital's Fraudulent Judgment Lien merely encumbers 50 North's equity in the Building, allowing 50 North to remain the title owner of the Building and Mr. Sofer to continue to exercise control through his domination of the entities/people that own 50 North and Mirable Capital.

---

[21] Under TUFTA, an "insider" is defined in relevant part as follows:

(B) If the debtor is a corporation:
  (i) A director of the debtor;
  (ii) An officer of the debtor;
  (iii) A person in control of the debtor;
  (iv) A partnership in which the debtor is a general partner;
  (v) A general partner in a partnership described in subdivision (7)(B)(iv); or
  (vi) A relative of a general partner, director, officer, or person in control of the debtor;

See Tenn. Code Ann. § 66-3-302(7)(B). "Person" under TUFTA means "an individual, partnership, corporation, **association, organization,** government or governmental subdivision or agency, **business trust, estate, trust, or any other legal or commercial entity**." See Tenn. Code Ann. § 66-3-302(9) (emphasis added).

18

44.     **Badge of Fraud No. 3: The debt obligations and the judgment lien were concealed from Raymond James.** A debtor's intent to defraud may also be inferred from whether the transfer "was disclosed or concealed." See Tenn. Code Ann. § 66-3-305(b)(3). 50 North never disclosed to Raymond James: a) that it had undertaken the massive and onerous obligations to MH Trust reflected in the Notes, b) the subsequent assignment of those Notes to Mirable Capital, c) Mirable Capital's lawsuit against 50 North, d) 50 North's deliberate decision not to defend that action resulting in the $19 million Fraudulent Default Judgment, and e) Mirable's subsequent suit to enroll that judgment and file it as the Fraudulent Judgment Lien. While 50 North belatedly disclosed its sham sale of the Building to SIG last spring, it said nothing about the Notes – despite discovery requests in the Litigation requiring such disclosure. Raymond James learned of the resulting $19,086,594.03 Fraudulent Judgment Lien only after it was reported in news articles that Mirable Capital had enrolled its foreign judgment.

45.     **Badge of Fraud No. 4: 50 North incurred the debt obligations after it had already been sued by Raymond James.** Another badge of fraud is whether, "[b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." See Tenn. Code Ann. § 66-3-305(b)(4). 50 North supposedly executed both of the Notes on December 1, 2023 – more than five years after Raymond James initiated the Litigation in 2018. Raymond James has asserted claims seeking more than $13 million against 50 North in the Litigation.  The fact that 50 North and Mr. Sofer have now manufactured over $19 million in debt obligations – first to a family-run trust and then to a newly formed company associated with Mr. Sofer's daughter– is a clear badge of fraud.

46.     **Badges of Fraud Nos. 5 and 6: The debt obligations and resulting judgment lien encumber 50 North's only asset, leaving it insolvent as to Raymond James.** Two related

19

badges of fraud are whether the transfer encompassed "substantially all the debtor's assets" and whether the debtor "was insolvent or became insolvent shortly after the transfer was made." See Tenn. Code Ann. § 66-3-305(b)(5) and (9). Upon information and belief, 50 North is, and has always been, a single-purpose entity formed to own and operate one primary asset – the Building. By taking on the massive obligation under the Notes and/or by engineering the $19 million judgment lien against the Building, 50 North – through the handiwork of the Defendants – has effectively rendered 50 North insolvent as to Raymond James' claims in the Litigation. Indeed, the Fraudulent Judgment Lien – even before a year or more of interest at $4.5 million per year – roughly equals Colliers' estimate of the Building's value. This manufactured insolvency on demand is another clear badge of fraud.

47.     **Badge of Fraud No. 7: 50 North received no reasonably equivalent value in exchange for incurring the debt obligations.** An additional and final badge of fraud is whether "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred." See Tenn. Code Ann. § 66-3-305(b)(8). 50 North received little to no benefit by virtue of executing the Notes for any of several reasons. First, upon information and belief, the supposed loans to 50 North set forth in the Notes were also a sham and were never made, and/or the loan money was not spent for the benefit of the Building.  Since the Notes were executed in December 2023, there have been no noticeable improvements or meaningful investments in the Building that would reflect the infusion of some **$13.5 million** in proceeds.[22] In addition, the

---

[22] Indeed, the Revolving Note required loan proceeds to "be used solely by Borrower for the purposes of the Borrower's business in connection with the operation of the property known as 50 North Front Street, Memphis, Tennessee." See Revolving Note, **Exhibit E**, at p. 2. Section 2(c). Moreover, any attempt to load up the Building with debt for other non-Building related purposes would also constitute a voidable fraudulent transfer under TUFTA – any financial obligation 50 North incurs while the Litigation remains ongoing is actionable given it would have the effect of

onerous terms of the Notes also undermine any finding of equivalent value, particularly when the loans were coming from an entity – MH Trust – that was a *part owner* of 50 North and should have had a vested interest in its success. MH Trust would thus be expected to provide terms that were at least fair, if not even *below market.* Instead, the terms 50 North received were those of a loan shark: ruinous above-market interest rates of 12% and 15% per annum, usurious default and post-judgment interest rates of 24%, an automatic late fee of 5%, and an express waiver of all defenses and counterclaims. (See fns. 14 and 15, supra). No legitimate borrower negotiating at arm's length would accept these terms. In short, 50 North purported to obligate itself to pay $13,650,000 – at predatory rates, to entities controlled by the same person who controls 50 North – all in exchange for nothing of discernible value to the Building.

48.     At a minimum, there was a lack of innocent purpose or use for 50 North's entry of the usurious Notes, or for the encumbrance of the Building via Mirable Capital's Fraudulent Judgment Lien, and said acts violate Tennessee law, including the Tennessee Uniform Fraudulent Transfer Act ("TUFTA"), Tenn. Code Ann. § 66-3-301, *et seq*.

## CAUSES OF ACTION
### COUNT I – VIOLATION OF THE TENNESSEE UNIFORM FRAUDULENT TRANSFER ACT AND TENNESSEE COMMON LAW – INCURRENCE OF THE DEBT OBLIGATIONS

**Against 50 North, Mr. Sofer, Regal, Waterfront, MH Trust, and Mrs. Sofer**

49.     Raymond James incorporates by reference each of the preceding paragraphs in this Complaint as if fully restated herein.

---

stripping equity out of the Building – the lone asset Raymond James is presently able to collect upon.

50.     Raymond James is a creditor under TUFTA because it is a person – defined to include corporations and any other legal or commercial entity – "who has a claim[.]" See Tenn. Code Ann. § 66-3-302(3)-(4).

51.     TUFTA defines the term "claim" broadly to mean "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" Tenn. Code Ann. § 66-3-302(3). Raymond James' claims arise from the pending Litigation – where it has alleged claims valued at over $13 million against 50 North – that have yet to be resolved.

52.     TUFTA provides a non-exclusive list of factors, known as "badges of fraud," that create a presumption that the debtor acted with "actual intent" to hinder, delay, or defraud the creditor.[23]  In addition, courts in Tennessee look to several other common-law "badges of fraud" to "provide additional circumstantial evidence of a debtor's fraudulent intent beyond the

---

[23] The TUFTA statutory badges of fraud applicable here include whether:
1.    The transfer … was to an insider;
2.    The debtor retained possession or control of the property transferred after the transfer;
3.    The transfer … was disclosed or concealed;
4.    Before the transfer was made …, the debtor had been sued or threatened with suit;
5.    The transfer was of substantially all the debtor's assets;
6.    The debtor absconded;
7.    The debtor removed or concealed assets;
8.    The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred…
9.    The debtor was insolvent or became insolvent shortly after the transfer was made …;
10.   The transfer occurred shortly before or shortly after a substantial debt was incurred; and
11.   The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

See Tenn. Code Ann. § 66-3-305(b).

22

enumerated statutory factors." Edgefield Holdings, LLC v. Blumberg 2 Tr., 2023 WL 3766807, at *5 (E.D. Tenn. June 1, 2023).[24]

53.     50 North purportedly incurred $13.65 million in unsecured debt obligations to MH Trust under the Notes dated December 1, 2023. Mr. Sofer executed each of the Notes at issue on behalf of 50 North as its "Manager." He is also 50 North's "President" and is one of the two Trustees of MH Trust. Mr. Sofer is also the "Manager" of Regal and Waterfront – the two entities that own 50 North—and, upon information and belief, is also the owner of Regal and the indirect owner of Waterfront by virtue of his ownership of Regal and MH Trust. Mr. Sofer makes the business decisions for 50 North through his position with 50 North and his dominion and control over both Regal and Waterfront.

54.     MH Trust is a statutory insider of 50 North because both entities are owned and/or controlled by Mr. Sofer.

---

[24] The non-statutory badges of fraud include whether:

1. The transferor is in a precarious financial condition.
2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.
3. Inadequate consideration was given for the transfer.
4. Secrecy or haste existed in carrying out the transfer.
5. A family or friendship relationship existed between the transferor and the transferee(s).
6. The transfer included all or substantially all of the transfer[or]'s nonexempt property.
7. The transferor retained a life estate or other interest in the property transferred.
8. The transferor failed to produce available evidence explaining or rebutting a suspicious transaction.
9. There is a lack of innocent purpose or use for the transfer.

See Edgefield Holdings, 2023 WL 3766807, at *5.

55. 50 North's entry into the debt obligations represented by the Notes to MH Trust violated TUFTA because the obligations were incurred with the actual intent to hinder, delay, or defraud Raymond James, per Tenn. Code Ann. § 66-3-305(a)(1) and (2).

56. As alleged above and herein, Mr. Sofer and the other Defendants acted with actual intent to hinder, delay, or defraud Raymond James by, among other things, incurring the Notes and not repaying the Notes, all of which reduced and/or eliminated 50 North's equity in the Building. Defendants' acts implicate the following badges of fraud:

   a. The debt obligations were purportedly made to MH Trust, an insider under TUFTA;

   b. The loans represented by the Notes, upon information and belief, were not funded, or if they were funded, the money was not used for the Building.

   c. The debt obligations were not disclosed to Raymond James.

   d. Raymond James had already asserted its claims against 50 North in the Litigation at the time 50 North incurred the debt obligations.

   e. There is no evidence that 50 North received anything of value in exchange for the incurrence of the debt obligations.

   f. The primary asset available to 50 North to repay the debt obligations is the Building – the sole asset that 50 North asserts Raymond James can recover against in the Litigation.

   g. 50 North and Mr. Sofer attempted to convey the Building to SIG approximately nine months after the debt obligations were incurred (an independent violation of TUFTA).

57. Through the incurrence of the debt obligations under the Notes, Defendants have attempted to render 50 North effectively insolvent and judgment proof as to Raymond James. Due

24

to the fraudulent incurrence of the debt obligations Raymond James has lost the ability to collect on the only asset with enough value to potentially satisfy its claims in the Litigation, or at minimum, had this ability severely impaired.

58.    Accordingly, Raymond James has been damaged and will continue to be damaged by Defendants' violation of TUFTA without intervention of the Court as requested below.

59.    Mr. Sofer personally authorized, directed, and executed the schemes described in this Complaint. He executed both of the Notes as 50 North's "Manager," knowing at the time that 50 North's sole meaningful asset was the Building and that Raymond James had already asserted substantial claims against 50 North in the Litigation. By executing Notes totaling $13,650,000 plus ruinous interest and penalties in favor of MH Trust – a trust of which he and his wife are the sole trustees – Mr. Sofer caused 50 North to purportedly obligate itself to insiders in an amount that equaled, if not far exceeded, the value of 50 North's primary asset, all with the intent to hinder, delay, and defraud Raymond James. Alternatively, and as a result of his control and dominion over 50 North, MH Trust, Regal, and Waterfront in furtherance of these fraudulent schemes, Mr. Sofer is also personally liable as the alter ego of each of these entities.

60.    MH Trust is also liable as an obligee of the fraudulent Note obligations. Both the Promissory Note ($11,150,000) and the Revolving Note ($2,500,000) were made payable directly to MH Trust. MH Trust, acting through its trustees, Mr. Sofer and Mrs. Sofer, accepted these obligations knowing, among other things, that: (a) 50 North's sole meaningful asset was the Building; (b) Raymond James had already asserted substantial claims against 50 North in the Litigation; and (c) the fraudulent Note obligations were unsecured and far exceeded the value of any benefit conferred on 50 North. As an obligee that accepted fraudulently incurred obligations with knowledge of the fraudulent purpose, MH Trust is subject to liability under TUFTA for the

25

amount of the transfer. Tenn. Code Ann. § 66-3-309(b). Mrs. Sofer is also liable for her direct participation in the incurrence of the fraudulent Note obligations, as is MH Trust as her principal. Mrs. Sofer serves as co-trustee of MH Trust alongside Mr. Sofer. Upon information and belief, in her capacity as trustee, she accepted the Notes on behalf of MH Trust with knowledge of the fraudulent purpose described herein. Mrs. Sofer is personally liable for the torts she directed and committed, regardless of whether they were performed through or for the benefit of MH Trust. Alternatively, and as a result of the control and dominion Mrs. Sofer exercised over MH Trust in furtherance of the fraudulent scheme, Mrs. Sofer is also personally liable as an alter ego of MH Trust.

61.     Regal and Waterfront are jointly liable under Count I because of their responsibility for the acts committed by their agent, Mr. Sofer, on their respective behalfs, and because they failed to exercise sufficient control over Mr. Sofer and 50 North to prevent the fraudulent transfers described herein as the two members (i.e., owners) of 50 North. They had the power and authority to prevent 50 North/ Mr. Sofer from entering the Notes, from failing to repay the Notes. Instead, they allowed Mr. Sofer to engineer a $19+ million plus in debts unpaid by 50 North, stripping most if not all of the equity of the Building.

**COUNT II – VIOLATION OF THE TENNESSEE UNIFORM FRAUDULENT TRANSFER ACT AND TENNESSEE COMMON LAW – IMPOSITION OF THE FRAUDULENT JUDGMENT LIEN ON THE BUILDING.**

**Against all Defendants**

62.     Raymond James incorporates by reference each of the preceding paragraphs in this Complaint as if fully restated herein.

63.     50 North did not repay any of the debt purportedly owed to MH Trust under the terms of the Notes, which ultimately allowed a default judgment to be entered against 50 North on

26

the Notes (the Fraudulent Default Judgment) in favor of Mirable Capital, and thereafter allowed the Fraudulent Default Judgment to be enrolled by default by Mirabel Capital – resulting in a first priority judgment lien (the Fraudulent Judgment Lien) against the Building. Each of these acts (or failures to act) reduced and/or eliminated 50 North's equity in the Building.

64.    Mirable Capital is a statutory insider of 50 North because Mirable Capital's sole member is Mrs. Friedman, who, upon information and belief, is the daughter of Mr. and Mrs. Sofer. Upon information and belief, Mr. Sofer controls and directs the actions of Mirable Capital.

65.    Mirable Capital filed a lawsuit against 50 North in New York to collect on the debt owed under the Notes. See **Exhibits  F and G**. 50 North did not defend itself in the New York lawsuit, and the New York court granted a default judgment in Mirable Capital's favor against 50 North in the amount of $19,086,594.03 plus post-judgment interest at a rate of twenty-four percent (24%) per annum (the Fraudulent Default Judgment).

66.    Thereafter, Mirable Capital domesticated and enrolled the Fraudulent Default Judgment in an uncontested action it brought in the Chancery Court of Shelby County, Tennessee. The Chancery Court's Order Enrolling Foreign Judgment was recorded in the Shelby County, Tennessee Register's Office as Instrument No. 26030549 (the Fraudulent Judgment Lien). See **Exhibit I**.

67.    Mirable Capital's judgment against 50 North now acts as a first priority lien on the Building. If allowed to stand, this lien would be superior to any future judgment lien Raymond James obtains against the Building.

68.    TUFTA defines the term "transfer" to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an

interest in an asset, and includes payment of money, release, lease, and **creation of a lien or other encumbrance**[.]" Tenn. Code Ann. § 66-3-302(12) (bolding added).

69.     If Raymond James can establish just one badge of fraud, then it "gives rise to a presumption of fraud." <u>Arvest Bank v. Byrd</u>, 814 F. Supp. 2d 775, 800 (W.D. Tenn. 2011) (quotations omitted) "When that presumption arises, the burden then shifts to defendants' to disprove fraud.'" <u>Claridge House Condo. Owners' Ass'n, Inc. v. CRM Cent. Properties LLC</u>, 2017 WL 10309767, at \*3 (W.D. Tenn. Feb. 14, 2017) (internal citations omitted). All of the Defendants – as alleged in this Complaint – worked together to facilitate the transfer of the Building to Mirable Capital in order for Mirable Capital to record the Fraudulent Judgment Lien.

70.     As alleged above and herein, Mr. Sofer and the other Defendants conspired together and acted with actual intent to hinder, delay, or defraud Raymond James through the creation and filing of the Fraudulent Judgment Lien. Defendants' acts implicate the following badges of fraud:

  a.  The transfer was made to Mirable Capital, an insider under TUFTA.

  b.  The transfer was effectively made by Mr. Sofer, the person who ultimately owns and controls 50 North, to his daughter, the owner of Mirable Capital.

  c.  The transfer was not disclosed to Raymond James.

  d.  Raymond James had already asserted its claims against 50 North in the Litigation at the time 50 North entered the Notes, as well as when MH Trust transferred the Notes, and when Mirable filed the Fraudulent Judgment Lien on the Building.

  e.   Upon information and belief, 50 North did not receive equivalent value in exchange for the debt incurred under the Notes, and/or whatever value that was received was not utilized for the Building.

28

f.  The Building is 50 North's primary asset of value.

g.  Through the creation of purported debt obligations to an insider, which were later assigned to another insider, and the subsequent engineering of a Fraudulent Default Judgment and Fraudulent Judgment Lien, Defendants have stripped the Building of its equity and rendered 50 North insolvent as to Raymond James.

71.     Due to the fraudulent transfer of the Building, Raymond James has lost the ability to collect on the only asset 50 North alleges is available to Raymond James with enough value to potentially satisfy its claims in the Litigation.

72.     Mr. Sofer personally directed and orchestrated the transfer at issue in Count II. Upon information and belief, Mr. Sofer directed Mrs. Sofer, as trustee of MH Trust, to execute the allonges assigning the Promissory Note and Revolving Note to Mirable Capital, directed and/or acquiesced in Mirable Capital's filing of the sham lawsuit against 50 North in New York, and directed or allowed 50 North to default – resulting in a judgment that was then enrolled uncontested in Shelby County to encumber the Building. These acts were performed by Mr. Sofer for his own ultimate benefit, as the person who owns and controls 50 North and whose daughter owns Mirable Capital. Mr. Sofer is personally liable for his direct participation in the fraudulent transfer of the Building's equity through the enrollment of the Mirable Capital judgment lien.  Alternatively, and as a result of his control and dominion over 50 North, MH Trust, Regal, Waterfront, and, upon information and belief, Mirable Capital, in furtherance of the fraudulent scheme, Mr. Sofer is also personally liable as the alter ego of each of these entities.

73.     Mrs. Sofer is also personally liable – and MH Trust is derivatively liable – for its trustees' direct role in the fraudulent transfer of the Building's equity. The critical link enabling the entire transfer chain was Mrs. Sofer's execution of the two allonges on September 3, 2025 that

29

moved the debt incurred by the Notes from MH Trust to Mirable Capital just six days before Mirable Capital filed its complaint against 50 North in New York. By executing these allonges as trustee of MH Trust, Mrs. Sofer transferred both the Promissory Note ($11,150,000.00) and the Revolving Note (with an outstanding principal of $2,400,000.00) to Mirable Capital, an entity owned by her own daughter. Without Mrs. Sofer's execution of the allonges, Mirable Capital would have had no standing to file the New York lawsuit, obtain the default judgment of $19+ million, or enroll the judgment lien against the Building. The six-day interval between execution of the allonges (September 3, 2025) and the filing of the New York complaint (September 9, 2025) demonstrates that these acts were coordinated and executed in rapid succession as part of a preconceived scheme. Mrs. Sofer is personally liable for the torts she directly committed, whether performed through or for the benefit of MH Trust. See Cooper v. Cordova Sand & Gravel Co., Inc., 485 S.W.2d 261, 271-72 (Tenn. Ct. App. 1971).

74. Mrs. Friedman is also personally liable – and Mirable Capital is derivatively liable – for her direct role in the fraudulent transfer of the Building's equity. Upon information and belief, Mrs. Friedman, acting under the direction and control of her father, Mr. Sofer, caused or directed Mirable Capital to: (a) accept the assignment of the Notes from MH Trust knowing that no legitimate debt was owed and, upon information and belief, not paying equivalent value for that debt; (b) file the sham New York complaint against 50 North; (c) obtain the default judgment of $19+ million; and (d) enroll the resulting judgment – the Fraudulent Judgment Lien – as a lien against the Building in Shelby County, Tennessee. These acts were performed by Mrs. Friedman for the ultimate benefit of her father, Mr. Sofer, who retains effective control of 50 North and the Building through these machinations. Mrs. Friedman is personally liable for her participation in the fraudulent transfer.

30

75.    Regal and Waterfront are jointly liable under Count II because of their responsibility for the acts committed by their agent, Mr. Sofer, on their respective behalfs, and because they failed to exercise sufficient control over Mr. Sofer and 50 North to prevent the fraudulent transfers described herein as the two members (i.e., owners) of 50 North. Both Regal and Waterfront failed to prevent 50 North from defaulting on both the New York and Tennessee lawsuits filed by Mirable Capital. Instead, they allowed Mr. Sofer to engineer the $19+ million plus Fraudulent Default Judgment against 50 North and the Fraudulent Judgment Lien against the Building. Regal and Waterfront are thus jointly liable for this fraudulent transfer of the Building's equity.

76.    Accordingly, Raymond James has been damaged and will continue to be damaged by these violations of TUFTA without the intervention of the Court as requested below.

## COUNT III – CIVIL CONSPIRACY
### Against All Defendants

77.    Raymond James incorporates herein by reference each of the preceding paragraphs in this Complaint as if fully set forth herein.

78.    Under Tennessee law, the elements of a claim for civil conspiracy are "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." Carroll v. TDS Telecommunications Corp., 2017 WL 6757566 at *8 (W.D. Tenn. Dec. 29, 2017).

79.    Each element of a conspiracy has been met here, given the common design of and the concerted action/coordination between 50 North, Mr. Sofer, Mrs. Sofer, Ms. Friedman, MH Trust, Regal, and Waterfront to file and thereafter "litigate" the sham lawsuit between Mirable

31

Capital and 50 North to default judgment in New York. This, in turn, led to the domestication of that judgment by Shelby County Chancery Court, which allowed Mirable Capital to thereafter file the Fraudulent Judgment Lien on the Building. With its equity stripped away, the Building is worthless to authentic creditors and potential creditors (such as Raymond James), while leaving Mr. Sofer in full control of the Building.

80.     Defendants engaged in this conspiracy in order to unlawfully frustrate the collection of any judgment by creditors such as Raymond James. Defendants committed these acts with the goal of hindering, delaying, and/or defrauding 50 North's creditors, including Raymond James in the Litigation, whose Lease with 50 North purports to limit the collection of any judgment against 50 North or Mr. Sofer to 50 North's interest in the Building.

81.     Mr. Sofer and the other Defendants are personally liable for the civil conspiracy described herein, having personally directed and/or participated in the common design to manufacture debt obligations, assign them to an insider entity, and allow a default judgment to be entered and enrolled against the Building – all with the purpose of frustrating Raymond James' ability to collect on any judgment it may receive in the Litigation.

82.     The Defendants' conspiracy has damaged and will continue to damage Raymond James without the intervention of the Court as requested below.

83.     This is not the first time 50 North and Mr. Sofer have conspired with an insider in an attempt to thwart Raymond James' ability to collect on a judgment it may receive in the Litigation. Indeed, 50 North and Mr. Sofer conspired with Mr. Brach – Mr. Sofer's business associate and friend – Mr. Brach's entity, SIG 50, and others by way of a below-market fraudulent sale of the Building. See pp. 10-13, supra. Thus, 50 North and Sofer have engaged in a pattern of conspiring with insiders to fraudulently place the Building and/or its equity out of Raymond

James' reach before the Litigation concludes. Accordingly, Raymond James is entitled to an attachment of the Building, preliminary and permanent injunctive relief, plus the other relief requested below, to prevent 50 North, Mr. Sofer, and the other Defendants from conspiring now or in the future to fraudulently transfer the Building or from taking any other actions which are intended to and/or have the effect of, hindering Raymond James' ability to collect on any judgment which it might receive.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Raymond James respectfully requests the following relief:

1. That proper process be issued against the Defendants to answer this Complaint within the time allowed by law;

2. That this Court issue a writ of attachment bringing the Building before this Court to prevent the sale, transfer, or conveyance of this real property and improvements to any person or entity during the pendency of the Litigation until such time as Raymond James is no longer a creditor under TUFTA as to any of the Defendants, and as provided in Tenn. Code Ann. § 66-3-308(3)(A) and/or as permitted under Tennessee statutory or common law;

3. That the Court preliminarily and permanently enjoin each Defendant, including all agents or employees, from any participation in the transfer and/or the creation, disposition, and/or execution of any lien or obligation on/in the Building, or from taking any other actions which are intended to and/or have the effect of, hindering Raymond James' ability to collect on any judgment which it might receive until such time as Raymond James is no longer a creditor under TUFTA as to any of the Defendants, and as provided in Tenn. Code Ann. § 66-3-308(3)(A) and/or as permitted under Tennessee statutory or common law;

33

4. That the Court set aside each of the fraudulent transfers described above, including:

(1) The debt obligations 50 North incurred to MH Trust and to Mirable Capital under the terms of the Notes; and

(2) All judgment liens against the Building in favor of Mirable Capital and its assigns, including the $19,086,594.03 lien recorded as Instrument No. 26030549 in the Shelby County, Tennessee Register's Office.

5. That any Lien Lis Pendens filed by Raymond James not be disturbed until such time as Raymond James is no longer a creditor under TUFTA as to any of the Defendants;

6. An award of compensatory and nominal damages against each Defendant, jointly and severally, in the amounts to be proven at trial;

7. An award of punitive damages against each Defendant, jointly and severally, in the amount of either two times Raymond James' compensatory damages as proven at trial or $500,000, whichever is greater;

8. That Raymond James be awarded its reasonable attorneys' fees and expenses, plus all costs incurred relating to this case, as is required under Section 50 of the Lease (attached hereto as **Exhibit A**) or as otherwise available;

9. That Raymond James be awarded any other injunctive relief as necessary to protect its rights and claims in this matter and in the Litigation;

10. That any Lien Lis Pendens filed by Raymond James be recognized as the first priority lien on the Building until such time as Raymond James is no longer a creditor under TUFTA as to any of the Defendants; and

11. That Raymond James be awarded any additional or different remedies or relief to which it is entitled at law or in equity, including all remedies that are potentially available to it under TUFTA.

DATED: August 11, 2026,

Respectfully Submitted,

**Raymond James & Associates, Inc.**
By Its Attorneys,

*/s/ Niel Prosser*
Niel Prosser (TN BPR No. 11647)
Kyle Johnson (TN BPR No. 36066)
Alex Bunn (TN BPR No. 40490)
PROSSER & JOHNSON, PLLC
5865 Ridgeway Center Parkway, Suite 300
Memphis, Tennessee 38120
Telephone: (901) 820-4433
np@prosserlaw.com
kjohnson@prosserlaw.com
abunn@prosserlaw.com

*/s/ John Branson*
John R. Branson (BPR No. 10913)
JWL INTERNATIONAL
311 Poplar View Lane West, Suite 2
Collierville, TN  38017
Telephone: (901) 569-1175
jrb@jwlinternational.com

*/s/ Pete A. Brunson*
Pete A. Brunson (BPR No. 37109)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
First Horizon Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 577-8213
pbrunson@bakerdonelson.com